# Under Secretary of the Treasury for Enforcement

The President does not have a legal duty to make a nomination for Under Secretary of the Treasury for Enforcement.

If the President does not make a nomination, the Secretary of the Treasury could perform the duties himself or assign them to another official of his department.

December 19, 2002

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF THE TREASURY

You have asked for our opinion whether the President has a legal duty to make a nomination for Under Secretary of the Treasury for Enforcement. We believe that he does not. You have further asked how, if the President does not make a nomination, the duties of the office may be discharged. We believe that the Secretary of the Treasury ("Secretary") could perform the duties himself or assign them to another official of his department.

## I.

Under 31 U.S.C. § 301(d) (2000), the Department of the Treasury "has . . . an Under Secretary for Enforcement . . . appointed by the President, by and with the advice and consent of the Senate." At present, this Under Secretary supervises the Bureau of Alcohol, Tobacco, and Firearms, but the recently enacted Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), which will become effective January 24, 2003, *id*. § 4, 116 Stat. at 2142, will largely transfer that bureau to the Department of Justice. *Id*. § 1111(c). The Treasury Department will retain only the bureau's administration and revenue collection functions, which will be performed by a newly created Tax and Trade Bureau. *Id*. § 1111(d). The Tax and Trade Bureau is to be headed by an Administrator, "who shall perform such duties as assigned by the Under Secretary for Enforcement of the Department of the Treasury." *Id*. § 1111(d)(2). In addition to assigning these duties, the Under Secretary for Enforcement implicitly will have one other statutory responsibility: to receive advice and recommendations from the Director of the Financial Crimes Enforcement Network about "matters relating to financial intelligence, financial criminal activities, and other financial activities." 31 U.S.C.A. § 310(b)(2)(A) (West. Supp. 2002).

In view of the highly limited statutory duties that the Under Secretary for Enforcement will exercise after the Homeland Security Act takes effect, you have raised the possibility that the President might not wish to fill the next vacancy in that office.

230

## II.

Our opinions do not definitively resolve whether, in these circumstances, the President has a legal duty to make a nomination. Some statutes provide that the President "shall" nominate and, with the Senate's advice and consent, appoint a particular officer, and these statutes may be understood to require the President to make a nomination within a reasonable time. *See* Memorandum [for the Acting Attorney General], from Robert G. Dixon, Jr., Assistant Attorney General, Office of Legal Counsel, *Re: Applicability of the 30-Day Vacancies Act Time Limit to Your Tenure as Acting Attorney General* at 29-30 (Dec. 7, 1973) (the statute providing for appointment of the Attorney General and the President's constitutional responsibilities "create a legal duty—and not merely political pressure—to submit a nomination within a reasonable time after the vacancy occurred"); *see also* Memorandum for the Attorney General, from Golden W. Bell, Assistant Solicitor General, *Re: Vacancy in the Office of Attorney General*, 8 Unpub. Op. A.S.G. 1538, 1540 (Dec. 5, 1938). *But see* Letter for the President, from Homer Cummings, Attorney General, 2 Unpub. Op. A.S.G. 447 (Jan. 24, 1934).[1] Other statutes provide that the President "may" make nominations and appointments. *See, e.g.*, 28 U.S.C. § 504 (2000) (Deputy Attorney General). By their plain terms, these other statutes give the President the discretion to leave the offices unfilled.

Here, the language of the statute is that the Treasury Department "has" an Under Secretary for Enforcement. 31 U.S.C. § 301(d). This language appears to describe, rather than prescribe, the make-up of the Department. Along these lines, the Senate Committee on Appropriations' Explanatory Statement on the Emergency Supplemental Appropriations Act of 1994, the bill that enacted the language, observed that the provision would "*permit* the President to nominate, with the advice and consent of the Senate, a third Under Secretary of the Treasury." 140 Cong. Rec. 2031 (1994) (emphasis added).[2] At the least, Congress imposed no clear obligation upon the President to make a nomination, and we would not read

---

[1] In other instances, we have more generally identified a duty to submit a nomination when an official is "acting" in an office and thus when failure to make a nomination within a reasonable time might undercut the Senate's role of advice and consent. *See, e.g.*, *Status of the Acting Director, Office of Management and Budget*, 1 Op. O.L.C. 287, 290 (1977); Memorandum for the Attorney General, from Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Acting Designation* (Dec. 12, 1997); *see also* Letter for the President, from Homer Cummings, Attorney General, 6 Unpub. Op. A.S.G. 756 (Sept. 24, 1936); *Oversight of the Implementation of the Vacancies Act: Hearing on S. 1764 Before the Senate Comm. On Governmental Affairs*, 105 Cong. 138, 148 (1998) (statement of Joseph N. Onek, Principal Deputy Associate Attorney General, and Daniel Koffsky, Special Counsel, Office of Legal Counsel).

[2] Congress in 1993 directed that "[n]otwithstanding any other provision of law, the Secretary of the Treasury shall establish an Office of the Undersecretary for Enforcement within the Department of the Treasury by no later than February 15, 1994." Pub. L. No. 103-123, § 105, 107 Stat. 1226, 1234 (1993). Congress enacted the current language of 31 U.S.C. § 301(d) in 1994. Neither of these enactments answers the question whether Congress has required the filling of the office to be established.

one into the statute: "When Congress decides purposefully to enact legislation restricting *or regulating* presidential action, it must make its intent clear." *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) (emphasis added).

To be sure, 31 U.S.C. § 301 also provides that "[t]he President may appoint, by and with the advice and consent of the Senate, an Assistant General Counsel who shall be the Chief Counsel for the Internal Revenue Service," 31 U.S.C. § 301(f)(2), and the use of "may" in this provision arguably suggests that, in contrast, the "has . . . an Under Secretary for Enforcement" language was intended to impose a duty on the President to fill the office of Under Secretary for Enforcement. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks omitted). But this possible inference hardly makes "clear" that Congress intended to fix a duty upon the President. *Armstrong*, 924 F.2d at 289. Indeed, the provision on the Chief Counsel continues: "The Chief Counsel is the chief law officer for the Service and shall carry out duties and powers prescribed by the Secretary." 31 U.S.C. § 301(f)(2). As this additional language shows, section 301 does not invariably use the present tense of verbs ("has" or "is") to refer to offices that necessarily will be filled, and no inference should be drawn from the use of the words "has . . . an Under Secretary for Enforcement" rather than some variation of the "may appoint" formulation.

## III.

If the President leaves the office unfilled, the remaining duties of the office must be carried out by some other official. As noted above, the Under Secretary for Enforcement assigns duties to the Tax and Trade Bureau and receives advice and recommendations from the Director of the Financial Crimes Enforcement Network. Absent new legislation, there are, we believe, two basic ways in which these responsibilities could be performed.

First, the Secretary himself could assign duties to the Tax and Trade Bureau and receive the reports from the Director of the Financial Crimes Enforcement Network. Under 31 U.S.C. § 321(c) (2000), "[d]uties and powers of officers and employees of the Department are vested in the Secretary," with some express exceptions not relevant here. The Secretary, therefore, could carry out these duties. Interpreting similar language applicable to the Attorney General, 28 U.S.C. § 509 (2000), we have concluded that the provision sets up a "general standing rule that all functions performed by officers in the Department of Justice are vested ultimately in the Attorney General and may be performed by him." Memorandum for the Deputy Attorney General, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Authority of the Attorney General Over the*

*National Institute of Justice and the Bureau of Justice Statistics* at 2 (Oct. 14, 1980) ("1980 Opinion"). We would find a similar "general standing rule" under 31 U.S.C. § 321(c). Although this "standing rule" may be overcome when, for example, there is a "specific and explicit reservation of 'final' decisionmaking power" in a subordinate official, 1980 Opinion at 2, no such reservation or other limit applies to the duties of the Under Secretary for Enforcement. *See also, e.g.*, *Vacancy Act (5 U.S.C. § 3345-3349)—Law Enforcement Assistance Administration*, 2 Op. O.L.C. 72, 74 (1978) (the functions of the Law Enforcement Assistance Administration, unlike "most of the components of the Department," were not "completely vested in the Attorney General," although the Attorney General had supervisory power). Accordingly, the Secretary himself could perform those duties.

Second, we believe that the Secretary could exercise his power under 31 U.S.C. § 321(b)(2) to "delegate [his] duties and powers . . . to another officer or employee of the Department of the Treasury." With 31 U.S.C. § 321(c) having vested in the Secretary the duties of the Under Secretary for Enforcement, section 321(b)(2) would allow the Secretary to assign those duties to another officer or employee of the Treasury Department. Once again, we have recognized the lawfulness of similar arrangements under the statutes governing the Department of Justice. *See* Memorandum for the Deputy Attorney General, from John C. Yoo, Deputy Assistant Attorney General, Office of Legal Counsel, and Rosemary Hart, Senior Counsel, Office of Legal Counsel, *Re: Granting Special Deputy United States Marshal Status to Private Security Guards* at 3 n.1 (Oct. 30, 2001) (function of the Marshals Service is vested in the Attorney General and delegated to the Deputy Attorney General).

We can identify no bar to the exercise of this authority in the present case. Although Congress may restrict the transfers of particular authorities to particular components, *see*, *e.g.*, 5 U.S.C. app. 3, § 9(a)(2) (2000) (ordinarily barring the transfer of "program operating responsibilities" to an Inspector General), no such restriction appears applicable here. Further, under the Vacancies Reform Act, 5 U.S.C. §§ 3345-3349d (2000), if a statute or regulation provided that *only* the Under Secretary of Enforcement could perform a particular responsibility, and if that position became vacant, only the Secretary of the Treasury himself or an Acting Under Secretary for Enforcement could perform that function or duty. *See* 5 U.S.C. § 3348(a)(2), (b). Here, however, the statutes do not require the Under Secretary for Enforcement personally to carry out the assigned duties, rather than delegating them; we have found no codified regulation requiring such personal action, *see* 31 C.F.R. §§ 1.1, 1.20 (2002); and we are informed by your office that there are no such uncodified regulations or orders. We therefore believe that the

Vacancies Reform Act would not preclude the Secretary from delegating the duties in question to another official of the Department.[3]

M. EDWARD WHELAN III
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[3] We do not intend here to set out a comprehensive list of all the kinds of restrictions that might apply to any transfer of authority within the Department of the Treasury, but confine ourselves to the present case. We also note that we do not address any provisions governing the transfer of funds necessary to effect a transfer of responsibilities. *See, e.g.*, 31 U.S.C. § 321(b)(3) (the Secretary "may transfer within the Department the records, property, officers, employees, and unexpended balances of appropriations, allocations, and amounts of the Department that the Secretary considers necessary to carry out a delegation" under section 301(b)(2)).